UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
DEANNE HOBSON                 :      Civ. No. 3:20CV00812(JCH)
                              :
v.                            :
                              :
KEMPER INDEPENDENCE INS. CO.  :      August 9, 2021
                              :
------------------------------x
```

RULING ON MOTION TO COMPEL [Doc. #51]

This matter has been referred to the undersigned for a ruling on the Motion to Compel [Doc. #51] filed by plaintiff Deanne Hobson ("plaintiff" or "Hobson"). See Docs. #53, #54. For the reasons set forth herein, plaintiff's Motion to Compel [Doc. #51] is **GRANTED, in part, and DENIED, in part.** Defendant Kemper Independence Insurance Co. ("defendant" or "Kemper") shall provide responses to the disputed document requests, as described below, on or before **August 27, 2021.**

I. **Background**

Plaintiff brings three claims in this action: (1) breach of contract, (2) violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"),[1] and (3) unjust enrichment. See Doc.

---

[1] "CUIPA does not support a private right of action, but individuals may bring a CUTPA claim for violations of CUIPA." 50 Waterville St. Tr., LLC v. Vermont Mut. Ins. Co., No. 3:21CV00368(KAD), 2021 WL 2530777, at *2 (D. Conn. June 21, 2021). As such, plaintiff brings count two under the Connecticut Unfair Trade Practices Act ("CUTPA"), alleging that defendant

#32, Amended Complaint. Plaintiff alleges that she purchased homeowner's insurance from defendant in December 2017. See id. at 1. Plaintiff's policy insured her residence for various types of damage and loss, with a coverage limit of $542,000.00. See id. at 1-2. On May 15, 2018, plaintiff's residence was "severely damaged by covered perils as defined in the policy, i.e., falling trees and wind and water which entered through openings in the house caused by the direct force of the wind during a 'macroburst' storm[.]" Id. at 2.

Plaintiff contends that "a representative of Kemper and a Construction Contractor paid by Kemper came to the premises to conduct an inspection, take photographs and assess the storm damage." Id. The "Construction Contractor" retained by defendant to provide a cost estimate for the repairs was Rebuild General Contracting, Inc. ("Rebuild"). Id. at 5. Rebuild estimated the repair costs would be $78,559.79, which, according to plaintiff, "did not address" certain necessary repairs. Id. at 2. Plaintiff hired a professional engineer who concluded that the residence required repairs beyond those identified by Rebuild. See id. at 3. Plaintiff notified defendant of the additional repairs, and "put [defendant] on notice of the work that was in progress" by

---

violated CUIPA. See Doc. #32 at 7. The Court will refer to count two as plaintiff's "CUIPA claim" throughout this Ruling.

plaintiff's contractor, but received no response. Id. Plaintiff asserts that necessary repairs to her residence cost $234,484.67, but that defendant has only reimbursed her $66,367.37. See id.

Of particular relevance to this Ruling, plaintiff alleges that defendant engaged in unfair insurance practices, in violation of CUIPA, by, inter alia, retaining Rebuild to provide a valuation of the cost to repair plaintiff's home, despite the fact that Rebuild is not licensed in Connecticut to perform the actual repair work. See id. at 5-6. Plaintiff contends that defendant routinely uses Rebuild, and other unlicensed contractors, to provide low-cost estimates in order "to assist the Defendant in underpaying" claims. Id. at 6. Plaintiff alleges that she is "aware of several other instances of inappropriate claims practices by the Defendant in connection with the 2018 storm in Fairfield County[,]" including "unrealistically low valuations and [the] use of unlicensed contractors[.]" Id. at 7.

The parties have been engaged in discovery, which is set to close on September 20, 2021. See Doc. #57. On July 2, 2021, plaintiff served a Re-Notice of Deposition of defendant, pursuant to Federal Rule of Civil Procedure 30(b)(6), for July 15, 2021. See Doc. #51-1 at 1. Attached to the Re-Notice of Deposition were six requests for production ("RFPs"). See id. at

3

2. On July 12, 2021, defendant served objections to the six RFPs, and refused to produce any documents in response to the RFPs. See Doc. #58-1 at 63-67. The parties "attempted to meet and confer" on July 12, 2021, but were unable to resolve the dispute. Doc. #51 at 2. Plaintiff filed the instant Motion to Compel on July 13, 2021, seeking to compel production of the requested documents prior to the Rule 30(b)(6) deposition scheduled for July 15, 2021. See Doc. #51.

On July 14, 2021, Judge Janet C. Hall referred this matter to the undersigned. See Doc. #54. Judge Hall entered an Order requiring the parties to reschedule the July 15, 2021, deposition, noting the Court's inability to address the Motion to Compel prior to that date. See Doc. #53. The undersigned also entered an Order, clarifying that the deposition should be rescheduled "for a date after July 26, 2021, to allow the Court sufficient time to rule on the Motion to Compel." Doc. #55.

On July 20, 2021, defendant filed an Objection to Plaintiff's Motion to Compel, which indicates that the relevant Rule 30(b)(6) deposition has been rescheduled for August 27, 2021. See Doc. #58 at 4.

## II. **Applicable Law**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[T]he burden of demonstrating relevance remains on the party seeking discovery." Bagley v. Yale Univ., 315 F.R.D. 131, 144 (D. Conn. 2016) (citation omitted); Republic of Turkey v. Christie's, Inc., 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (same). Once the party seeking discovery has demonstrated relevance, the burden then shifts to "[t]he party resisting discovery ... [to] show[] why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

"Rule 26(b)(1) is liberally construed and is necessarily broad in scope." Parimal v. Manitex Int'l, Inc., No. 3:19CV01910(MPS)(SALM), 2021 WL 1978347, at *3 (D. Conn. May 18, 2021) (citation and quotation marks omitted). "To fall within the scope of permissible discovery, information must be relevant to any party's claim or defense. In order to be relevant for Civil Rule 26 discovery purposes, information and evidentiary material must be relevant as defined in Rule of Evidence 401." Durant v. Target Stores, Inc., No. 3:15CV01183(JBA), 2017

WL 4163661, at *3 (D. Conn. Sept. 20, 2017) (citation and quotation marks omitted). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed R. Evid. 401.

"The broad standard of relevance, however, is not a license for unrestricted discovery." Gucci Am., Inc. v. Guess?, Inc., 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011). Under Rule 26, as amended in 2015, a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Proportionality focuses on the marginal utility of the discovery sought." In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y. 2016) (citation and quotation marks omitted). "Proportionality and relevance are conjoined concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 49 (E.D.N.Y. 2018) (citation and quotation marks omitted).

## III. **Discussion**

Plaintiff seeks to compel responses to six RFPs. See Doc. #51 at 2. Defendant has objected to each of the six requests,

and has not produced any responsive documents. <u>See</u> Doc. #58 at
5-12; <u>see also</u> Doc. #58-1 at 63-67.

As an initial matter, the Court notes that the Motion to
Compel contains very little argument. <u>See</u> Doc. #51. Plaintiff
cites to just two cases in the Argument section of the Motion,
and offers <u>no case law</u> that addresses the substantive objections
raised by defendant. <u>See</u> <u>id.</u> at 3-6. Nevertheless, the Court has
largely granted plaintiff's Motion because, once relevance has
been demonstrated, "[t]he party resisting discovery bears the
burden of showing why discovery should be denied." <u>Cole</u>, 256
F.R.D. at 80. As described herein, defendant has repeatedly
failed to meet that burden.

The Court will first address defendant's general
objections, and then turn to each of the disputed RFPs.

A.   <u>Defendant's General Objections</u>

Defendant objects to RFPs 1, 2, and 3 on the basis that
each is "vague, ambiguous, overly broad, harassing and
potentially burdensome." Doc. #58-1 at 63-64. Defendant objects
to RFPs 4 and 5 on the basis that each is "vague, ambiguous,
overly broad, harassing, unlimited in time and potentially
burdensome." <u>Id.</u> at 65. Defendant objects to RFP 6 on the basis
that it is "vague, overly broad, not limited to a reasonable
period of time, harassing and unduly burdensome." <u>Id.</u> at 66.
Further, defendant objects to RFPs 1, 2, 3, 4, and 5, to the

extent that each "contains undefined terms[,]" and to RFPs 1, 2, and 3, to the extent that each "seeks proprietary and trade secret information."[2] Id. at 63-64.

The Federal Rules require a party objecting to discovery to "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Defendant's "[p]at, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure." Benjamin v. Oxford Health Ins., Inc., No. 3:16CV00408(AWT)(SALM), 2017 WL 772328, at *4 (D. Conn. Feb. 28, 2017) (quoting In re Priceline.com Inc. Sec. Litig., 233 F.R.D. 83, 85 (D. Conn. 2005)).

While defendant contends that the requests are "burdensome[,]" Doc. #58-1 at 63-66, it "has made no showing as to the nature and extent of the actual burden it would face in responding to the plaintiff's requests." DiPippa v. Edible Brands, LLC, No. 3:20CV01434(MPS)(SALM), 2021 WL 2201194, at *8 (D. Conn. June 1, 2021) (citation and quotation marks omitted). "In the absence of any showing, the court cannot sustain the defendant's burdensomeness objection[s]." Id. (citation and

---

[2] Defendant objects to RFP 6 on similar grounds, stating the request "seeks information that constitutes confidential, proprietary, or commercially sensitive business information." Doc. #58-1 at 66.

quotation marks omitted). Furthermore, defendant has failed to identify which terms, if any, it claims are "undefined[,]" or to specify how the requested information might be "proprietary[.]" Doc. #58-1 at 63-65.

For these reasons, defendant's boilerplate objections, which fail to "clearly set forth the specifics of the objection and how that objection relates to the documents being demanded[,]" are overruled. Benjamin, 2017 WL 772328, at *4 (citations and quotation marks omitted).

Defendant also objects to RFPs 1, 2, 3, and 6 on privilege grounds. See Doc. #58-1 at 63-64, 66. "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must[] ... describe the nature of the documents, communications, or tangible things not produced or disclosed[.]" Fed. R. Civ. P. 26(b)(5)(A); see also D. Conn. L. Civ. R. 26(e). To the extent that defendant objects to producing material in response to any specific request on privilege grounds, defendant must produce a privilege log, in accordance with the federal and local rules. See Fed. R. Civ. P. 26(b)(5); D. Conn. L. Civ. R. 26(e). Because defendant has failed to do so, these objections are overruled.[3]

---

[3] If any of the discovery responses ordered herein contain privileged information, defendant may provide an appropriate

The Court now turns to each of the disputed RFPs, and the specific objections raised thereto.

B.   RFP 1

RFP 1 seeks "[a]ll documents relating to the resolution of claims relating to property damage in Fairfield County, Connecticut arising from inclement weather on May 15, 2018." Doc. #51-1 at 2. Plaintiff contends this information is relevant "to the Plaintiff's claim that the Defendant has an unlawful pattern or practice with respect to the processing of claims." Doc. #51 at 4. Plaintiff argues that RFP 1 "is narrowly tailored to address the most comparable of losses to the Plaintiff – those arising from the same weather hazard." Id.

Defendant objects to this RFP on boilerplate grounds that have already been addressed by the Court. See supra, Section A. Defendant also contends that the information sought in RFP 1 is not relevant, stating, "to the extent the plaintiff seeks to inquire as to matters unrelated to the event that is the subject of this lawsuit and have no nexus to the plaintiff's claims, the Production Request is irrelevant[.]" Doc. #58-1 at 64.

The Amended Complaint alleges a claim under CUIPA. See Doc. #32 at 5-7. CUIPA prohibits "unfair methods of competition and unfair and deceptive acts or practices in the business of

_____

privilege log identifying any responsive material withheld on the basis of privilege.

10

insurance[.]" Conn. Gen. Stat. §38a-816. To prevail on a CUIPA
claim, a plaintiff must present "enough facts to permit for the
reasonable inference that the unfair insurance practice occurred
with enough frequency for it to be deemed a general business
practice." Kim v. State Farm Fire & Cas. Co., No.
3:15CV00879(VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30,
2015). "Having that burden, the plaintiff is entitled to
conduct discovery as to whether or not the alleged unfair"
insurance practice plaintiff claims "to have occurred with
respect to the plaintiff's coverage, also occurred with respect
to claims submitted by other insureds with similar coverage."
Union St. Furniture & Carpet, Inc. v. Hartford Fin. Servs. Grp.,
Inc., No. CV-04-4002621-S, 2006 WL 2194381, at *1 (Conn. Super.
Ct. July 19, 2006) (footnote omitted); see also Guillory v.
Allstate Ins. Co., 476 F. Supp. 2d 171, 175-76 (D. Conn. 2007)
("Although plaintiff has not pled any frequency with which the
defendant engaged in the insurance practices he complains of,
this is a proper area for discovery, particularly as such
information may only be in defendant's possession, not
plaintiff's."); cf. Krausman v. Liberty Mut. Ins. Co., No. FST-
CV-17-6030945-S, 2021 WL 2458344, at *1 (Conn. Super. Ct. June
2, 2021) ("It is difficult to imagine how any plaintiff could
prove a general business practice without discovery
of documents in other claims files. Here, the subpoenaed claims

files would be relevant to establish that other claimants had the same experience with Liberty.”). “Discovery in this context has ... been allowed when it is narrow in scope and pertinent to the merits of the plaintiff's CUTPA and CUIPA claims[.]” <u>Union St. Furniture & Carpet, Inc.</u>, 2006 WL 2194381, at *1 (citations and quotation marks omitted).

Plaintiff alleges that Kemper has engaged in unfair insurance practices including, <u>inter alia</u>, retaining Rebuild, which she alleges is not licensed to conduct business in Connecticut, to provide an estimate of the cost of plaintiff's repairs. <u>See</u> Doc. #32 at 5-6. Because Rebuild is unlicensed, plaintiff contends Rebuild “never had any intention of actually completing the work on Plaintiff's home[]” and its “estimate for the work dramatically undervalued the loss in comparison to the actual and necessary expenses actually incurred by” plaintiff. <u>Id.</u> at 6. Plaintiff asserts that this behavior is part of a broader pattern. <u>See id.</u> at 7. Indeed, plaintiff specifically alleges that she “is aware of several other instances of inappropriate claims practices by the Defendant in connection with the 2018 storm in Fairfield County.” <u>Id.</u> Judge Hall denied defendant's motion to dismiss plaintiff's CUIPA claim, finding that plaintiff

> has alleged sufficient facts to plausibly allege “an
> unfair practice occurred with enough frequency for it to
> be deemed a ‘general business practice.’” <u>Kim v. State</u>

12

> <u>Farm Fire and Casualty Co.</u>, 2015 WL 6675532, *5
> (citations omitted), and thus has alleged an unfair or
> deceptive practice under [CUTPA.]

Doc. #35 at 1.

Accordingly, evidence that Kemper retained unlicensed

contractors, like Rebuild, to provide unrealistically low repair

estimates for claims brought by other insureds is relevant to

plaintiff's CUIPA claim. However, RFP 1, as currently framed,

seeks documents beyond this relevant inquiry. The Court finds

that the information contained in documents relating to Kemper's

use of an outside expert or contractor to assess property damage

and provide an estimate of the costs of repair is relevant.

Defendant shall provide any such documents for all claims

relating to property damage in Fairfield County, Connecticut,

arising from the storm on May 15, 2018. This request, so

limited, is permissibly "narrow in scope and pertinent to the

merits of" plaintiff's CUIPA claim. <u>Union St. Furniture &</u>

<u>Carpet, Inc.</u>, 2006 WL 2194381, at *1 (citations and quotation

marks omitted); <u>cf.</u> <u>id.</u> ("[I]t has been noted in a fire loss

case that the information sought should pertain to other fire

damage claims on which payment was denied by the defendant at or

around the time of the denial of the plaintiff's claims and that

the party seeking discovery should not be allowed to indulge a

hope that a thorough ransacking of any information and material

which the other party may possess would turn up evidence helpful
to his case." (citations and quotation marks omitted)).

To the extent that defendant contends it should not be
compelled to produce the "records of other insurance
companies[,]" Doc. #58 at 6, a party need only produce relevant
discovery within its "possession, custody, or control[.]" Fed.
R. Civ. P. 34(a)(1).

Defendant further objects to RFP 1 on privacy grounds,
contending that it is "a wholesale invasion of the privacy
rights of other insureds of Kemper." Doc. #58-1 at 63-64.
Defendant argues that "claims presented to Kemper by other
persons contain personal information concerning other insureds
and the production of such information would expose Kemper to
claims related to the disclosure of such personal information."
Doc. #58 at 6. Connecticut law prevents insurance companies from
disclosing "any personal or privileged information concerning an
individual collected or received in connection with an insurance
transaction[,]" Conn. Gen. Stat. §38a-988, except in certain
situations, including "[i]n response to a ... valid ... judicial
order," Conn. Gen. Stat. §38a-988(8). The statute defines
"personal information" as "any individually identifiable
information gathered in connection with an insurance transaction
from which judgments can be made about an individual's
character, habits, avocations, finances, occupation, general

reputation, credit, health or any other personal characteristics. 'Personal information' includes an individual's name and address and 'medical-record information[.]'" Conn. Gen. Stat. §38a-976(20).

In Pike v. Anderson, No. X-01-CV-010165364-S, 2002 WL 31304235, at *3 (Conn. Super. Ct. Sept. 18, 2002), the Court concluded that information sought in discovery, including "applications for insurance and underwriting information, [is] likely to contain some protected and some unprotected information." Nevertheless, the Court ordered disclosure of the requested documents, "find[ing] that the unprotected information is either relevant or likely to lead to relevant information[.]" Id. However, the Court ordered "that the documents should be provided with all personal and privileged information redacted." Id.

Similarly here, it is possible that information responsive to RFP 1 may contain personal information, as defined by the statute. But because information sought in RFP 1 "is either relevant or likely to lead to relevant information," defendant shall produce it, albeit with "all personal ... information redacted." Id.; see also ITT Corp. v. Travelers Cas. & Sur. Co., No. 3:12CV00038(JAM)(JGM), 2017 WL 385034 (D. Conn. Jan. 27, 2017) (finding that Conn. Gen. Stat. §38a-988 "does not bar production of" documents related to the claims of other

insureds, but ordering the redaction of insureds' names from such documents).[4] Defendant may also designate documents produced in response to RFP 1 as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEY'S EYES ONLY," pursuant to the Standing Protective Order entered in this case, if appropriate. Doc. #8.

The Court understands defendant's concerns that producing personal information in response to RFP 1 could "expose Kemper to claims related to the disclosure of such personal information." Doc. #58 at 6. However, such concerns are adequately addressed by (1) redaction of any personal information from the documents produced, and (2) the issuance of this Order requiring such production.

For these reasons, the Motion to Compel is **GRANTED, in part**, as to RFP 1. Defendant shall respond to the following narrowed version of RFP 1, on or before August 27, 2020: "All documents relating to Kemper's use of an outside expert or contractor to assess property damage and provide an estimate of the costs of repair, for claims relating to property damage in

---

[4] Moreover, and as noted, Conn. Gen. Stat. §38a-988(8) permits the disclosure of personal information in response to a judicial order, such as this Ruling. See Bruno v. Bruno, No. FA-05-4004906-S, 2010 WL 1005974, at *6 (Conn. Super. Ct. Feb. 10, 2010) ("In this case, the only circumstance that might allow release of [insurance] file information is [in] 'response to a facially valid administrative or judicial order[.'] ... This memorandum of decision affords the court the opportunity to make such an order.").

Fairfield County, Connecticut, arising from inclement weather on May 15, 2018."[5] As noted, to the extent documents responsive to this request contain personal information, within the meaning of Conn. Gen. Stat. §38a-976(20), defendant shall redact such information.

      C.    RFPs 2 and 3

RFP 2 seeks "[a]ll communications, including all emails, relating to claim number C24929CT18 with date of loss May 15, 2018 and claimant Deanne Hobson." Doc. #51-1 at 2. RFP 3 seeks "[a]ll documents relating" to the same. Id. In support of her motion to compel responses to RFPs 2 and 3, plaintiff contends that "[t]here should be no dispute that documents in Kemper's possession relating to the insurance claim in dispute, including correspondence related thereto, is discoverable." Doc. #51 at 4. Indeed, plaintiff argues that defendant's "refusal to produce documents relating to the claim file in an insurance dispute is patently absurd and quintessential discovery abuse." Id.

Defendant objects to this RFP on boilerplate grounds that have already been addressed by the Court. See supra, Section A. In addition, defendant conclusorily states that "the request

---

[5] The Court does not expect that responding to this request, so limited, will pose an unduly burden on defendant. However, if defendant can make a showing that this narrowed version of RFP 1 is unduly burdensome, the Court will consider a renewed motion on that issue.

seeks documents already in the plaintiff's possession and thus, the same cannot be produced with any greater facility by Kemper than the plaintiff herself." Doc. #58-1 at 64. In its objection to the Motion to Compel, defendant repeats this contention: "Plaintiff is, or should be, well aware of all communications relating to the subject claim. Thus, the Plaintiff seeks what she already has in her possession." Doc. #58 at 7. Defendant makes this same assertion, verbatim, regarding RFPs 2 and 3, despite the fact that RFP 3 seeks all documents, not just communications. See id. at 7-8.

Defendant has provided no support for its contention that plaintiff "already has in her possession[]" all communications and documents related to the claim she filed with Kemper. Id. It is certainly possible that plaintiff has access to some communications and documents related to her claim, including, for example, any communications she personally received from defendant. However, defendant has set forth no basis for the conclusion that plaintiff already possesses all such communications and documents, including internal communications and memoranda. Moreover, "[a]n objection that the information sought in an interrogatory or request for production is equally available to the requesting party is insufficient to resist a discovery request." Milner v. City of Bristol, No.

18

3:18CV01104(JAM)(SALM), 2020 WL 6049261, at *3 (D. Conn. Oct. 13, 2020) (citation and quotation marks omitted).

Accordingly, defendant's objections to RFPs 2 and 3 are overruled. Because communications and documents related to plaintiff's disputed insurance claim are plainly relevant to plaintiff's case, the Motion to Compel is **GRANTED**, as to RFPs 2 and 3. Defendant shall provide responses to RFPs 2 and 3 on or before August 27, 2021. If defendant asserts that any information responsive to RFPs 2 and 3 is protected by the attorney-client privilege, then defendant shall produce a privilege log, in accordance with the federal and local rules. See Fed. R. Civ. P. 26(b)(5)(A); D. Conn. L. Civ. R. 26(e).

D.   RFP 4

RFP 4 seeks "[a]ll agreements, contracts, or engagement letters between Kemper Independence Insurance Company and Rebuild General Contracting, Inc. or its principals." Doc. #51-1 at 2. Plaintiff contends that she is entitled to these documents because the relationship between Kemper and Rebuild "is specifically at issue as it relates to the Plaintiff's claim that Kemper uses unlicensed contractors to provide lowball estimates in support of its practice of underpaying claims." Doc. #51 at 5.

In addition to the boilerplate objections the Court has already addressed, see supra, Section A, defendant objects to

RFP 4 on relevance grounds, contending that the request is not "reasonably calculated to lead to the discovery of admissible evidence." Doc. #58-1 at 65. The Court disagrees. As discussed, plaintiff alleges that Kemper retained Rebuild to provide a "low-cost estimate" of the repairs to her home, and that Kemper routinely engages in this behavior, such that it constitutes a general business practice, in violation of CUIPA. Doc. #32 at 6-7. The agreements, contracts, or engagement letters between Kemper and Rebuild may provide relevant information as to whether or not such a practice exists. Thus, the information sought in RFP 4 is relevant, and defendant's objection on that basis is overruled.

Defendant further asserts that "[t]he subject matter of this document production request was thoroughly addressed via testimony and document production during the deposition of Vincent Salierno, President of [Rebuild], on July 14, 2021. There is nothing more to produce." Doc. #58 at 9. Defendant's contention that "[t]he subject matter" of RFP 4 was "addressed via testimony" is insufficient, because RFP seeks documents, not testimony. Id. If defendant contends it has produced all responsive documents, then defendant must provide a signed verification to that effect. See Mirmina v. Genpact LLC, No. 3:16CV00614(AWT)(SALM), 2017 WL 2559733, at *4 (D. Conn. June 13, 2017) ("The representation by counsel for the defendant that

all documents have been produced in response to [the document request] constitutes an 'answer' which, pursuant to Rule 33 of the Federal Rules of Civil Procedure, requires a signature under oath by defendant." (citing <u>Napolitano v. Synthes USA, LLC</u>, 297 F.R.D. 194, 200 (D. Conn. 2014))). In that verification, defendant shall (1) describe the steps defendant took to confirm that all documents responsive to RFP 4 have been produced, and (2) specifically identify, by Bates number or exhibit number, which produced documents are responsive to this request.

For these reasons, the Motion to Compel is **GRANTED**, as to RFP 4. Defendant shall respond to this request, or provide a sworn verification that all documents responsive to RFP 4 have been produced, on or before August 27, 2021.

E.   <u>RFP 5</u>

RFP 5 seeks "[a]ll agreements, contracts, or engagement letters between Kemper Insurance Company and any third-party contractor that has been engaged to do work in the State of Connecticut and is not registered to do business within the State of Connecticut." Doc. #51-1 at 2. Plaintiff contends that "the agreement Kemper has with unlicensed contractors is at the core of the Plaintiff's unfair trade practices allegation and is relevant and discoverable." Doc. #51 at 5 (sic).

In addition to the boilerplate objections the Court has already addressed, <u>see</u> <u>supra</u>, Section A, defendant contends that

21

the information sought in RFP 5 is not relevant. See Doc. #58-1 at 65-66. Defendant argues that the request "is the functional equivalent of a request for agreements, contracts, or engagement letters between Kemper and its attorneys, accountants, computer software vendors, etc." Doc. #58 at 9. Thus, it appears defendant reads the term "third-party contractor" to mean any individual or business with whom or which defendant has contracted, for any purpose. Id. Based on that broad definition, defendant characterizes RFP 5 as "a fishing expedition designed to vex, harass and annoy Kemper and send its employees on a wild goose chase for useless information[.]" Id. at 9-10.

The Court agrees that a request for all agreements, contracts, or engagement letters between Kemper and any third-party with which it ever contracted exceeds the scope of relevant discovery, and is not "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Central to plaintiff's complaint is the allegation that defendant hired Rebuild to provide an estimate of the cost to repair plaintiff's home, even though Rebuild is not licensed in Connecticut to perform the necessary repair work. See Doc. #32 at 6-7. Plaintiff alleges that Kemper routinely uses "unlicensed contractors such as Rebuild" to provide these "unrealistically low valuations[.]" Id. at 7. Thus, "agreements, contracts, or engagement letters between Kemper" and any contractor it has used in the same way

as Rebuild, i.e., to provide an estimate of an insured's losses, even though the contractor is not licensed to perform repair work in Connecticut, are relevant to plaintiff's CUIPA claim.

Defendant also objects to RFP 5 because it is "unlimited in time[.]" Doc. #58-1 at 65. The Court sustains this objection. Defendant shall disclose all agreements, contracts or engagement letters between Kemper and any contractor, not licensed to perform repair or construction work in Connecticut, that was engaged to provide loss estimates or damage appraisals for properties located in Connecticut. This request shall be limited to agreements, contracts, or engagement letters entered into between January 1, 2015, and January 1, 2020, a five-year period which encompasses the underlying events.

For the reasons stated, the Motion to Compel is **GRANTED, in part**, as to RFP 5. Defendant shall provide a response to the request, as narrowed herein, on or before August 27, 2021.

F.   RFP 6

RFP 6 seeks "[c]opies of Kemper Independence Insurance Company's claims processing and/or handling manual." Doc. #51-1 at 2. Plaintiff asserts that "the claims handling manual and its instructions regarding use of contractors to provide alternate estimates" is relevant to plaintiff's allegations "that her claim was mishandled, and that Kemper has an unlawful practice." Doc. #51 at 5.

Defendant's objection to RFP 6 on relevance grounds is
overruled. See Doc. #58-1 at 66. Courts have found an insurer's
claims processing manuals to be relevant, and discoverable, for
several purposes. See, e.g., Champion Int'l Corp. v. Liberty
Mut. Ins. Co., 129 F.R.D. 63, 67–68 (S.D.N.Y. 1989) ("[C]laims
manuals are clearly germane to the interpretation of" insurance
policies.); U.S. Fire Ins. Co. v. Bunge N. Am., Inc., 244 F.R.D.
638, 646 (D. Kan. 2007) (affirming a Magistrate Judge's ruling
that "claims handling materials[]" are "relevant to whether
claims were properly handled, ... [and] demonstrate how the
Insurers' positions in this litigation are inconsistent with
previous coverage decisions[]"); Massachusetts Mut. Ins. Co. v.
Beeharilal, No. 14CV00085(JWD)(RLB), 2015 WL 1346242, at *9
(M.D. La. Mar. 24, 2015) (Claims manuals "are relevant to
Plaintiff's coverage and bad faith claims."); RAF Properties,
LLC v. United States Fire Ins. Co., No. 4:11CV00914(SWMS), 2012
WL 13055695, at *1 (S.D. Tex. Apr. 2, 2012) (Claims manual is
discoverable because it "is the only guideline defendants can
offer plaintiff on how defendants generally handle claims.").
Claims processing guidelines and manuals can "lead to admissible
evidence regarding any procedures put in place by [an insurer]
regarding the process by which claims adjusters may determine
that claims should be denied or whether coverage is

appropriate." Massachusetts Mut. Ins. Co., 2015 WL 1346242, at
*9.

As the Court has discussed at length, plaintiff alleges
that Kemper used an unlicensed contractor, Rebuild, to assess
the damage to her home, and that Rebuild "dramatically
undervalued the loss" plaintiff incurred. Doc. #32 at 6. Based
on the "unrealistically low valuation[]" of the cost to repair
plaintiff's home, Kemper refused to reimburse plaintiff for all
of the necessary repairs. Id. at 6-7. Plaintiff contends that
defendant has a pattern of engaging in such behavior, in
violation of CUIPA. See id. at 6-7. Therefore, to the extent
that defendant's claims manual contains "instructions regarding
use of contractors to provide alternate estimates" of repair
costs, Doc. #51 at 5, such information bears on the "procedures
put in place by [Kemper] regarding the process" it uses to
evaluate claims like plaintiff's, and is relevant to her CUIPA
claim. Massachusetts Mut. Ins. Co., 2015 WL 1346242, at *9.
Accordingly, defendant shall produce any sections of its claims
processing and/or handling manual pertaining to estimation of
loss.

Defendant further objects to RFP 6 "because it seeks
information that is ... protected by the attorney-client
privilege and work product doctrine[,]" Doc. #58-1 at 6, but has
provided no privilege log. Defendant relies on Hutchinson v.

25

Farm Family Cas. Ins. Co., 867 A.2d 1 (Conn. 2005), for the proposition that "absent allegations of bad faith, an insured is not entitled to obtain information or materials in an insurer's claims files or underwriting files." Doc. #58-1 at 66.

But the situation here is readily distinguishable from that in Hutchinson. The issue in Hutchinson was whether plaintiffs were entitled to "the production of certain materials covered by the attorney-client privilege that were contained in the defendant's files pertaining to the plaintiffs' insurance claim." Hutchinson, 867 A.2d at 3 (emphasis added). That is, the Court considered whether certain privileged materials were nonetheless discoverable under a "bad faith" exception to the attorney-client privilege. Id. at 5-7.

Here, by contrast, defendant has invoked the attorney-client privilege and the work product doctrine, but has offered no support whatsoever for that claim. See Doc. #58 at 10. "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." Bernstein v. Mafcote, Inc., 43 F. Supp. 3d 109, 114 (D. Conn. 2014). "The burden of establishing the applicability of the privilege rests with the party invoking it." Id. Defendant has provided no basis

26

for finding that its claims processing and/or handling manual
contains information protected by the attorney-client privilege.

"When a party withholds information otherwise discoverable
by claiming that the information is privileged or subject to
protection as trial-preparation material, the party must[] ...
describe the nature of the documents, communications, or
tangible things not produced or disclosed[.]" Fed. R. Civ. P.
26(b)(5)(A); see also D. Conn. L. Civ. R. 26(e). Defendant has
failed to do so. For these reasons, defendant's objection to RFP
6 on privilege grounds is overruled.

Finally, defendant objects to RFP 6 because it is "not
limited to a reasonable period of time[.]"[6] Doc. #58-1 at 66. The
Court agrees that the temporal scope of the request is overly
broad. Plaintiff has offered no argument to support a finding
that she is entitled to any claims processing and/or handling
manual that Kemper has ever used. Thus, defendant shall produce
any sections of the claims processing and/or handling manual **in
effect in 2018**, pertaining to estimation of loss.

For these reasons, the Motion to Compel is **GRANTED, in
part**, as to RFP 6. Defendant shall respond to RFP 6, as limited
herein, on or before August 27, 2021. If defendant asserts that
any information responsive to RFP 6 is protected by the

---

[6] Defendant also objects to RFP 6 on several boilerplate grounds,
which the Court addressed in Section A.

27

attorney-client or work product privilege, then defendant shall produce a privilege log, in accordance with the federal and local rules. <u>See</u> Fed. R. Civ. P. 26(b)(5)(A); D. Conn. L. Civ. R. 26(e).

**IV.   <u>Conclusion</u>**

Plaintiff's Motion to Compel [Doc. #51], is **GRANTED, in part, and DENIED, in part.** Defendant shall provide responses to the disputed document requests, as described in this Ruling, on or before **August 27, 2021.**

SO ORDERED at New Haven, Connecticut, this 9th day of August, 2021.

                                        /s/
                                        _____
                                        HON. SARAH A. L. MERRIAM
                                        UNITED STATES MAGISTRATE JUDGE